IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 6:09-cv-00061 |
| v. | ) | |
| | ) | |
| FORMOSA PLASTICS CORPORATION, | ) | |
| TEXAS, FORMOSA HYDROCARBONS | ) | |
| COMPANY, INC., FORMOSA PLASTICS | ) | |
| CORPORATION, LOUISIANA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, the United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

### NATURE OF ACTION

1.    Plaintiff brings this action under the Clean Air Act (CAA), 42 U.S.C. § 7401 *et seq.*; the Clean Water Act (CWA), 33 U.S.C. § 1251 *et seq.*; the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6901 *et seq.*; the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*; and the Emergency Planning and Community Right to Know Act (EPCRA), 42 U.S.C. § 11001 *et seq.* to obtain injunctive relief and civil penalties for violations of each of these statutes, as well as their implementing permits and regulations.

2.      This action relates to violations of the CAA, RCRA, CWA, EPCRA, and CERCLA at three chemical manufacturing facilities, Formosa Plastics Corporation, Texas, Formosa Hydrocarbons Company, Inc., and Formosa Plastics Corporation, Louisiana.  The subject facilities manufacture a variety of petrochemicals and plastic products.

## JURISDICTION, VENUE AND AUTHORITY

3.      This Court has jurisdiction over the subject matter of this action and over the Parties pursuant to 28 U.S.C. §§ 1331, 1345 and 1355; Section 113(b) of the CAA, 42 U.S.C. § 7413(b); Sections 301, 309 and 402 of the CWA, 33 U.S.C. §§ 1311, 1319 and 1342; Section 3008 of RCRA, 42 U.S.C. § 6928; Sections 304, 313 and 325 of EPCRA, 42 U.S.C. §§ 11004, 11023, and 11045; and Section 113 of CERCLA, 42 U.S.C. § 9613.   The Complaint states a claim upon which relief may be granted for injunctive relief and civil penalties against Defendants under the CAA, CWA, RCRA, EPCRA and CERCLA.

4.      The Southern District of Texas is an appropriate choice of venue in this action pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the Formosa Plastics Corporation, Texas facility is located here and Formosa Plastics Corporation, Texas, Formosa Plastics Corporation, Louisiana, and Formosa Hydrocarbons, Inc. are doing business in this District.  This venue is consistent with Section 113(b) of the CAA, 42 U.S.C. § 7413(b); CWA Section 309(b), 33 U.S.C. § 1319(b); RCRA Section 3008(a), 42 U.S.C. 6928(a); EPCRA Section 325(b), 42 U.S.C. § 11045(b); and CERCLA Section 113(b), 42 U.S.C. § 9613(b)..

5.      Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516, 519, Section 3008(a) of RCRA, 42 U.S.C. § 6928(a),

Section 309 of the CWA, 33 U.S.C. § 1319, Section 305 of the CAA, 42 U.S.C. § 7605, Section

113 of CERCLA, 42 U.S.C. § 9613, and Section 325 of EPCRA, 42 U.S.C. § 11045.

## NOTICE

6.      Notice of the commencement of this action has been given to the Texas

Commission on Environmental Quality (TCEQ) and the Louisiana Department of Environmental

Quality (LDEQ), pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Section

3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2) and Section 309(b) of the CWA, 33 U.S.C. §

1319(b).

## DEFENDANTS

7.      Defendants Formosa Plastics Corporation, Texas ("Formosa Plastics

Texas") and Formosa Hydrocarbons, Inc. ("Formosa Hydrocarbons") are corporations organized

and existing under the laws of the State of Delaware and doing business in the State of Texas.

Formosa Plastics Corporation, Louisiana ("Formosa Louisiana") is a corporation organized and

existing under the laws of the State of Delaware and doing business in the State of Louisiana.

8.      This action pertains to the Formosa Plastics Texas facility located at 201

Formosa Drive, Point Comfort Texas, the adjacent Formosa Hydrocarbons facility located at 103

Fannin Road, Point Comfort, Texas, and the Formosa Louisiana facility located on Gulf States

Road, Baton Rouge, Louisiana (collectively, the "Facilities").  At all times relevant to this

action: Formosa Plastics Texas owned and operated the Formosa Plastics Texas facility, Formosa

Hydrocarbons owned and operated the Formosa Hydrocarbons facility (hereinafter Formosa

Plastics Texas and Formosa Hydrocarbons will be referred to, collectively, as Formosa Texas),

and Formosa Louisiana operated the Louisiana facility.

9.      Formosa Texas and Formosa Louisiana are "persons" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), Section 1004(15) of RCRA, 42 U.S.C. § 6903(15), Section 329(7) of EPCRA, 42 U.S.C. § 11047(7), Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), and Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## BACKGROUND

10.      The Formosa Texas Facility and the Formosa Louisiana Facility manufacture poly vinyl chloride (PVC), a plastic material used in many applications from flexible sheeting to rigid water pipes.  The Formosa Texas Facility and the Formosa Louisiana Facility use a suspension resin process in which vinyl chloride monomer (VCM), a carcinogenic gas, and other ingredients are combined in pressure vessels called reactors.

11.      Polymerization takes place in those reactors, a process in which the molecules of vinyl are linked together to form long chains.  These polymer chains form the plastic PVC resin, which is sold as product.  In the PVC manufacturing process, medium and heavy hydrocarbons are thermally cracked to form ethylene.  Ethylene is converted into ethylene dichloride (EDC) and the EDC is thermally cracked to form VCM.  The Formosa Texas Facility is fully integrated in that the manufacturing process begins with the production of ethylene.  The Formosa Louisiana Facility is partially integrated, in that the process begins with the production of EDC.  The Formosa Louisiana Facility purchases ethylene and chlorine to manufacture EDC.

12.      In addition to ethylene, EDC, VCM, and PVC, the Formosa Texas Facility also produces a number of other petrochemical products, including polyethylene, ethylene glycol, and polypropylene.  Formosa Texas refines and sells as products other byproducts of the ethylene production, such as pyrolysis gas (a mixture of benzene, xylene, and toluene).  The

- 4 -

chlorine that the Formosa Texas Facility uses in its EDC production is manufactured onsite in the Chlor/Alkali Unit.  The process units (with abbreviations) at the Formosa Texas Facility are as follows: Formosa Hydrocarbons (FHC); Chlor-alkali (C/A); Ethylene dichloride (EDC); Ethylene glycol (EGVOC); Gasoline Hydrotreating (GHU); High density polyethylene (HDPE); High density polyethylene II (HDPE II); Inland division/traffic and C3 (INLANDIV/C3); Linear low-density polyethlene (LLDPE); Marine traffic (MT); Olefins (OLEFINS); Olefins II (OLII); Polypropylene (PPU/PPVOC); Polypropylene II (PPII); Polyvinyl chloride (PVC); and Vinyl chloride monomer (VCM).

13.     The manufacturing processes create several streams of liquid and sludge wastes.  Several of the liquid waste streams at the Formosa Texas Facility contain benzene, a carcinogenic substance.

14.     In November 2003 and February 2004, teams of EPA inspectors and engineers from Region VI and the National Enforcement Investigation Center, along with representatives of the State of Texas, conducted an inspection of the Texas Facility.  In April 2004, a team of EPA inspectors and engineers from Region VI and the National Enforcement Investigation Center, along with representatives of the State of Louisiana, conducted an inspection of the Louisiana Facility.  During these inspections, the teams discovered evidence of a number of violations of the environmental statutes and regulations described below.

## STATUTORY BACKGROUND

### Hazardous Waste (RCRA)

15.     RCRA establishes a comprehensive program to be administered by the Administrator of EPA for regulating the generation, transportation, treatment, storage, and disposal of hazardous waste.  42 U.S.C. §§ 6901 et seq.

16.     Pursuant to its authority under RCRA, EPA has promulgated regulations at 40 C.F.R. Part 260 through 272 applicable to generators, transporters, and treatment, storage and disposal facilities.  These regulations generally prohibit treatment, storage and disposal of hazardous waste without a permit or equivalent "interim status."  They prohibit land disposal of certain hazardous wastes, and provide detailed requirements to govern the activities of those who generate hazardous waste and those who are lawfully permitted to store, treat and dispose of hazardous waste.

17.     Pursuant to Section 3006 of RCRA, 42 U.S.C. § 6926, the EPA may authorize a state to administer a state hazardous waste program in lieu of the federal program when it deems the state program to be equivalent to the federal program.

18.     On December 26, 1984, (49 Fed. Reg. 48,300) the State of Texas received final authorization for its base RCRA program and there have been subsequent authorized revisions to said base program.

19.     On January 25, 1985, (50 Fed. Reg. 3,348) the State of Louisiana received final authorization for its base RCRA program and there have been subsequent authorized revisions to said base program.

20.     With the addition of Section 3006(g) of RCRA, 42 U.S.C. § 6926(g), new requirements imposed pursuant to the authority of the Solid Waste Disposal Act "SWDA," 42

U.S.C. §§ 6901 to 6992k, are immediately applicable in the authorized States upon the federal effective date.

21. The Texas Commission on Environmental Quality ("TCEQ") and the Louisiana Department of Environmental Quality ("LDEQ") are the State agencies designated to carry out the authorized RCRA program in Texas and Louisiana, respectively.

22. Specifically, the federal hazardous waste program is managed in the State of Texas pursuant to the Texas Administrative Code ("TEX.ADMIN.CODE") and the rules and regulations promulgated thereunder.

23. Specifically, the federal hazardous waste program is managed in the State of Louisiana pursuant to the Louisiana Administrative Code ("LAC") and the rules and regulations promulgated thereunder.

24. At all relevant times, Formosa Texas was and continues to be an "owner" and/or "operator" of the Formosa Texas facility and Formosa Louisiana was and continues to be an "owner" and/or "operator" of the Formosa Louisiana facility, within the meaning of 40 C.F.R. § 260.10 and the equivalent corresponding Texas and Louisiana hazardous waste regulations. The Facilities generate hazardous waste within the meaning of RCRA and the relevant state hazardous waste regulations.

25. Pursuant to Sections 3008(a) and (g) and 3006(g) of RCRA, 42 U.S.C. §§ 6928(a) and (g) and 6926(g), the United States may enforce the federally-approved Texas and Louisiana hazardous waste programs, as well as the federal regulations that remain effective in Texas and Louisiana by filing a civil action in United States District Court seeking civil penalties not to exceed specified amounts for each day of each violation, and injunctive relief.

26.     Section 3008(g) of RCRA, 42 U.S.C. § 69289(g), authorizes penalties of up to $25,000 per day.  Pursuant to the Debt Collection Improvement Act of 1996 (28 U.S.C. § 2461), the maximum civil penalty per day for each such violation occurring after January 30, 1997 but before March 16, 2004, has been increased to $27,500, and the maximum civil penalty per day for each such violation occurring on or after March 16, 2004 has been increased to $32,500. 40 C.F.R. §§ 19.1-19.4.

## Clean Air Act

27.     The Clean Air Act establishes a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population.  Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

28.     Section 111(b)(1)(A) of the Clean Air Act, 42 U.S.C. § 7411(b)(1)(A), requires the Administrator of U.S. EPA to publish a list of categories of stationary sources that emit or may emit any air pollutant.  The list must include any categories of sources which are determined to cause or significantly contribute to air pollution which may endanger public health or welfare.

29.     Section 111(b)(1)(B) of the Clean Air Act, 42 U.S.C. § 7411(b)(1)(B), requires the Administrator of U.S. EPA to promulgate regulations establishing federal standards of performance for new sources of air pollutants within each category of sources listed pursuant to Section 111(b)(1) of the CAA, 42 U.S.C. § 7411(b)(1)(A).  For purposes of Section 111 of the Clean Air Act, "new sources" are defined as stationary sources, the construction or modification of which is commenced after publication of regulations or proposed regulations prescribing a standard of performance applicable to such source.  42 U.S.C. § 7411(a)(2).

30.     Section 112(b) of the Clean Air Act, 42 U.S.C. § 7412(b), lists 188 hazardous air pollutants believed to cause adverse health or environmental effects.  Section 112(d) of the Clean Air Act, 42 U.S.C. § 7412(d), requires the Administrator to promulgate regulations establishing emission standards for each category or subcategory of major sources and area sources of hazardous air pollutants listed for regulation pursuant to subsection (c) in accordance with the schedules provided in subsection (c) and (e) of Section 112.  These standards are known as National Emission Standards for Hazardous Air Pollutants ("NESHAP").

31.     Section 112(b) of the Clean Air Act, 42 U.S.C. § 7412(b), designates vinyl chloride and benzene as hazardous air pollutants.

32.     The term "stationary source" is defined at Section 111(a)(3) of the Clean Air Act, 42 U.S.C. § 7411(a)(3), to mean any facility which emits or may emit any air pollutant.

33.     Sections 111(a)(5) and 112(a)(9) of the Clean Air Act, 42 U.S.C. §§ 7411(a)(5) and 7412(a)(9), define "owner or operator" as any person who owns, leases, operates, controls, or supervises a stationary source.

34.     EPA established emission standards for vinyl chloride by regulation, 40 C.F.R. Part 61, Subpart F (§§ 61.60 to 61.71) (the "Vinyl Chloride NESHAP").

35.     EPA established emission standards applicable to benzene-containing wastewaters, 40 C.F.R. Part 61, subparts FF ("Benzene Waste Operations NESHAP").   Benzene is a naturally-occurring constituent of petrochemical products and petrochemical waste and is highly volatile.

36.   The Formosa Texas and Formosa Louisiana Facilities are "stationary sources" within the meaning of Sections 111(a), 112(a), and 302(z) of the CAA, 42 U.S.C. §§ 7611(a), 7612(a), and 7602(z).

37.   The Formosa Texas and Formosa Louisiana Facilities are "major sources" as defined in Section 112(a) of the CAA, 42 U.S.C. § 7612(a).

38.   Section 113 of the Clean Air Act, 42 U.S.C. § 7413, authorizes EPA to commence a civil action for injunctive relief and civil penalties against any person who has violated any requirement or prohibition of the Clean Air Act or regulations promulgated thereunder, such as violations of a New Source Performance Standard or National Emission Standard for Hazardous Air Pollutants, or who has violated any applicable permit or implementation plan.

39.   Title V of the Clean Air Act, 42 U.S.C. §§ 7661-7661e, established an operating permitting program designed to include all applicable requirements of the Clean Air Act into a single permit, and to provide for permitting for sources of hazardous air pollutants. Section 502 of the Clean Air Act required states to submit an approvable Title V permitting program before November 15, 1993, and allowed EPA to approve on an interim basis programs that substantially meet the requirements of Title V.  42 U.S.C. § 7661(g).  Pursuant to Section 502, the Administrator has promulgated regulations at 40 C.F.R. Part 70 setting forth the minimum requirements for an approvable Title V program.  57 Fed. Reg. 32295 (July 21, 1992).

40.   Texas received source category-specific interim approval of its Title V program July 25, 1996, and received final full approval effective November 30, 2001.

41.   Louisiana's Title V program became effective on October 12, 1995.

- 10 -

42.     Formosa Texas owns and operates affected facilities subject to the requirements of the following requirements, which include LDAR standards: 40 C.F.R. Part 60, subpart VV (Standards of Performance for Equipment Leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry); subpart F (National Emission Standard for Vinyl Chloride), and subpart V (National Emission Standard for Equipment Leaks (Fugitive Emissions Sources); and 40 C.F.R. Part 63, subpart H (National Emission Standards for Organic Hazardous Air Pollutants for Equipment Leaks).

43.     Formosa Louisiana owns and operates affected facilities subject to the following requirements, which include LDAR standards: 40 C.F.R. Part 60, subpart VV (Standards of Performance for Equipment Leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry); subpart F (National Emission Standard for Vinyl Chloride), and subpart V (National Emission Standard for Equipment Leaks (Fugitive Emissions Sources); and 40 C.F.R. Part 63, subpart H (National Emission Standards for Organic Hazardous Air Pollutants for Equipment Leaks)

44.     Pursuant to Section 111(b)(1), 42 U.S.C. § 7411(b)(1), U.S. EPA promulgated New Source Performance Standards ("NSPS") for Equipment Leaks of VOC in Synthetic Organic Chemical Manufacturing Industry (SOCMI).  The NSPS for Equipment Leaks of Volatile Organic Compounds ("VOCs") in SOCMI apply to any "affected facility" for which construction or modification commenced after January 5, 1981.  The NSPS for Equipment Leaks of VOCs in SOCMI are set forth at Subpart VV of Part 60 of Title 40, 40 C.F.R. §§ 60.590 through 60.593.

45.     Under Subpart VV, an "affected facility" includes each group of all the "equipment" within a "process unit."  40 C.F.R. § 60.480(a)(2).  For purposes of Subpart VV "equipment" is defined as "each valve, pump, pressure relief device, sampling connection system, open-ended valve or line, and flange or other connector in VOC service."  40 C.F.R. § 60.481.  For purposes of Subpart VV, "process unit" is defined as components assembled to produce, as intermediate or final products, one or more of the chemicals listed in § 60.489 of subpart VV.  A process unit can operate independently if supplied with sufficient feed or raw materials and sufficient storage facilities for the product.  40 C.F.R. § 40.481.

46.      The Formosa Texas and Formosa Louisiana Facilities, respectively, contains one or more process units that produce one or more of the chemicals listed in 40 C.F.R. § 60.489.

47.     Pursuant to Section 112(d) of the Clean Air Act, 42 U.S.C. § 7412(d), U.S. EPA promulgated the Vinyl Chloride NESHAP, 40 C.F.R. Part 61, subpart F.  Pursuant to 40 C.F.R. § 61.60, the provisions of 40 C.F.R. Part 61, subpart F, apply to plants that produce (1) ethylene dichloride by reaction of oxygen and hydrogen chloride with ethylene, (2) vinyl chloride by an process, and/or (3) one or more polymers containing any fraction of polymerized vinyl chloride.

48.     The Formosa Texas and Formosa Louisiana Facilities contain one or more process units that are subject to the Vinyl Chloride NESHAP because they produce (1) ethylene dichloride by reaction of oxygen and hydrogen chloride with ethylene, (2) vinyl chloride by an process, and/or (3) one or more polymers containing any fraction of polymerized vinyl chloride.

49.     Pursuant to Section 112(d) of the Clean Air Act, 42 U.S.C. § 7412(d), U.S. EPA promulgated the NESHAP for Equipment Leaks (Fugitive Emission Sources), 40 C.F.R. Part 61, subpart V.  Pursuant to 40 C.F.R. § 61.240, the NESHAP for Equipment Leaks applied to each of the following sources that are intended to operate in volatile hazardous air pollutant (VHAP) service: pumps, compressors, pressure relief devices, sampling connection systems, open-ended valves or lines, valves, connectors, surge control vessels, bottoms receivers, and control devices or systems required by 40 C.F.R. Part 61, subpart V.  Pursuant to 40 C.F.R. § 61.241, VHAP means a substance regulated under 40 C.F.R. Part 61 for which a standard for equipment leaks of the substance has been proposed and promulgated.  Pursuant to 40 C.F.R. § 61.241, benzene and vinyl chloride are VHAPs.

50.     The Formosa Texas and Formosa Louisiana Facilities contain one or more process units containing sources that are intended to operate in VHAP service, including sources that are intended to operate in benzene and vinyl chloride service.

51.     Pursuant to Section 112(d) of the Clean Air Act, 42 U.S.C. § 7412(d), U.S. EPA promulgated the National Emission Standard for Organic Hazardous Air Pollutants for Equipment Leaks, 40 C.F.R. Part 63, subpart H (the "Hazardous Organic NESHAP" or "HON").  Pursuant to 40 C.F.R. § 63.160(a), subpart H applies to pumps, compressors, agitators, pressure relief devices, sampling connection systems, open-ended valves or lines, valves, connectors, surge control vessels, bottoms receivers, instrumentation systems, and control devices or closed vent systems required by subpart H that are intended to operate in organic hazardous air pollutant service 300 hours or more during the calendar year within a source subject to the provisions of a specific subpart in 40 C.F.R. Part 63 that references subpart H.  After the

- 13 -

compliance date for a process unit, equipment to which subpart H applies that also are subject to the provisions or 40 C.F.R. Part 60 and/or 40 C.F.R. Part 61 are required to comply only with the provisions of subpart H.  40 C.F.R. § 63.160(b).

52.     If a process unit subject to the provisions of 40 C.F.R. Part 63, subpart H, has equipment to which subpart H does not apply, but which is subject to 40 C.F.R. Part 60, subpart VV, GGG, or KKK, 40 C.F.R. Part 61, subpart F or J, or 40 C.F.R Part 264, subpart BB or 40 C.F.R Part 265, subpart BB, the owner or operator may elect to apply subpart H to all such equipment in the process unit. If the owner or operator elects this method of compliance, all VOC in such equipment shall be considered, for purposes of applicability and compliance with subpart H, as if it were organic hazardous air pollutant (HAP).  Compliance with the provisions of subpart H, in this manner is deemed to constitute compliance with the standards contained in 40 C.F.R. Part 60, subpart VV, GGG, or KKK, 40 C.F.R. Part 61, subpart F or J, or 40 C.F.R Part 264, subpart BB or 40 C.F.R Part 265, subpart BB.  40 C.F.R. § 63.160(c).

53.     The Formosa Texas and Formosa Louisiana Facilities each contain equipment intended to operate in organic hazardous air pollutant service 300 hours or more during with calendar year within a source subject to the provisions of a specific subpart in 40 C.F.R. Part 63 that references subpart H, or that are otherwise subject to the requirements of 40 C.F.R. Part 63, subpart H.

54.     EPA may bring a civil action pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), for injunctive relief and/or civil penalties of up to $25,000 per day for each violation of the Clean Air Act.  The Debt Collection Improvement Act, 31 U.S.C. § 3701 et. seq., requires EPA to periodically adjust its civil penalties for inflation.  On December 31, 1996

- 14 -

and February 13, 2004, EPA adopted regulations entitled "Adjustment of Civil Monetary Penalties for Inflation," 40 C.F.R. Part 19, which provide that the maximum civil penalty should adjust up to $27,500 per day for each violation that occurs from January 31, 1997 through March 14, 2004 and $32,500 per day for each violation that occurs on or after March 15, 2004.

### Clean Water Act

55.     Section 301(a) of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a) prohibits the "discharge of pollutants" except in compliance with certain sections of the CWA, including Sections 301 and 402, 33 U.S.C. §§ 1311 and 1342.

56.     The term "discharge of pollutants" is defined in Section 502(12) of the CWA, 33 U.S.C. § 1362(12), to mean "any addition of any pollutant to navigable waters from any point source…."

57.     The term "navigable waters" is defined in Section 502(7) of the CWA, 33 U.S.C. § 1362(7), to mean "the waters of the United States, including the territorial seas."

58.     The term "point source" is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14), to mean "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel . . . .from which pollutants are or may be discharged."

59.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the Environmental Protection Agency ("EPA") may issue National Pollutant Discharge Elimination System ("NPDES") permits to "persons" that authorize the discharge of any pollutant into navigable waters, but only in compliance with Section 301 of the CWA, 33 U.S.C. § 1311, and such other conditions as EPA determines are necessary to carry out the provisions of the CWA.

60.     At all times relevant hereto, the Facilities have discharged, and continue to discharge, "pollutants" from the Facility through "point sources" into "navigable waters," as each of these terms is defined in the Section 502 of the CWA, 33 U.S.C. § 1362.

61.     Section 402(b) of the CWA, 33 U.S.C. § 1342(b), provides that a State may establish its own permit program and, after receiving approval of its program by the EPA, may issue NPDES permits.

62.     EPA has approved Texas's program for issuance of NPDES permits. Under that program, Texas issued TPDES Permit No. 02436 (EPA I.D. No. TX0085570) to Formosa Texas.  That permit includes, *inter alia,* limits on the discharge of certain pollutants and requirements for control of storm water run-off.  EPA has approved Louisiana's program for issuance of NPDES permits.  Under that program, Louisiana issued LPDES Permit No. LA0006149 (EPA I.D. No. LA0006149) to Formosa Texas.  Those permits include, *inter alia,* limits on the discharge of certain pollutants and requirements for control of storm water run-off.

63.     Section 309(b) of the CWA, 33 U.S.C. 1319(b), authorizes commencement of a civil action for appropriate relief, including a permanent or temporary injunction, when any person is in violation of Sections 301, 302, 306, 307, 308, 318, or 405 of the CWA, 33 U.S.C. §§ 1311, 1312, 1316, 1317, 1318,1328 or 1345, or is in violation of any permit condition or limitation implementing any of those sections in a permit under Section 402 of the CWA, 33 U.S.C. § 1342.

64.     Section 309(d) of the Act, 33 U.S.C. § 1319(d), provides that any person who violates Sections 301, 302, 306, 307, 308, 318 or 405 of the CWA, 33 U.S.C. §§ 1311, 1312, 1316, 1317, 1318, 1328 or 1345, in violation of any permit condition or limitation

implementing any of those sections in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation.

65.    Pursuant to the Debt Collection Improvement Act of 1996 (28 U.S.C. § 2461), after March 15, 2004, any person who violates Sections 301, 302, 306, 307, 308, 318 or 405 of the CWA, 33 U.S.C. §§ 1311, 1312, 1316, 1317, 1318, 1328 or 1345, or is in violation of any permit condition or limitation implementing of any those sections in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $32,500 per day for such violation.  See 69 Fed. Reg. 7121 (Feb. 13, 2004).

**Reporting Requirements (CERCLA/EPCRA)**

66.    The Emergency Planning and Community Right-to-Know Act ("EPCRA") provides communities with information on potential chemical hazards within their boundaries and fosters state and local emergency planning efforts to control any accidental releases. Emergency Planning and Community Right-to-Know Programs, Interim Final Rule, 51 Fed.Reg. 41,570 (Nov. 17, 1986).

67.    EPCRA imposes and mandates notification requirements on industrial and commercial facilities and requires the creation of state emergency response commissions and local emergency planning committees.  EPCRA establishes a framework of state, regional, and local agencies designed to inform the public about the presence of hazardous and toxic chemicals, and to provide for emergency response in the event of health-threatening release.  The local emergency planning committees are charged with developing emergency responses plans based on the information provided by facilities.  Sections 301-303 of EPCRA, 42 U.S.C. §§ 11001-11003.

68.     Section 302(a) of EPCRA, 42 U.S.C. § 11002(a), requires the Administrator of EPA to publish a list of Extremely Hazardous Substances ("EHSs") which, when released into the environment, may present substantial danger to public health or welfare or the environment, and to promulgate regulations establishing that quantity of any EHS, the release of which shall be required to be reported under Sections 304(b) and 304(c) of EPCRA, 42 U.S.C. §§ 11004(b) and (c) ("Reportable Quantity" or "RQ").  The list of RQs for extremely hazardous substances is codified at 40 C.F.R. Part 355. Appendices A and B.

69.     Under Section 313 of EPCRA, 42 U.S.C. § 11023, and the regulations promulgated thereunder, Formosa Texas, Formosa Hydrocarbons, and Formosa Louisiana are required annually to calculate and report to EPA various data regarding toxic chemicals at their respective facilities during the preceding year.  Such data must include the "annual quantity of the toxic chemical entering each environmental medium."  42 U.S.C. § 11023 (g)(1)(c)(iv).

70.     Section 329(4) of EPCRA, 42 U.S.C. § 11029(4), and 40 C.F.R. § 372.3 define "facility" to mean, in relevant part, "all buildings, equipment, structures and other stationary items which are located on a single site ... and which are owned or operated by the same person."

71.     At all times relevant hereto, the Facilities have stored, and continue to store, at the Facilities "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

72.     At all times relevant hereto, the Facilities have stored, and continue to store, at the Facilities "extremely hazardous substances" as defined in Section 302(a) of EPCRA, 42 U.S.C. § 11002(a).

73.     Section 325(c) of EPCRA, 42 U.S.C. § 11045(c), authorizes penalties of up $25,000 per day for violations of the Act.   Pursuant to the Debt Collection Improvement Act of 1996 (28 U.S.C. § 2461), the maximum civil penalty per day for each such violation occurring after January 30, 1997 but before March 16, 2004, is increased to $27,500, and the maximum civil penalty per day for each such violation occurring on or after March 16, 2004 is increased to $32,500. 40 C.F.R. §§ 19.1-19.4.

## CLAIMS FOR RELIEF

### Formosa Texas

### CLEAN AIR ACT

74.     Paragraphs 1 through 14 and 27 through 54 are realleged and incorporated herein by reference.

### BENZENE WASTE OPERATIONS NESHAP CLAIMS

75.     The provisions of the Benzene Waste Operation NESHAP, 40 C.F.R. Part 61, subpart FF, are applicable to owners and operators of chemical manufacturing plants, coke byproduct recovery plants, and petroleum refineries.  A chemical manufacturing plant is any facility engaged in the production of chemicals by chemical, thermal, physical, or biological processes for use as a product, co-product, by-product, or intermediate including but not limited to industrial organic chemicals, organic pesticide products, pharmaceutical preparations, paint and allied products, fertilizers, and agricultural chemicals. Examples of chemical manufacturing plants include facilities at which process units are operated to produce one or more of the following chemicals: benzenesulfonic acid, benzene, chlorobenzene, cumene, cyclohexane,

ethylene, ethylbenzene, hydroquinone, linear alklylbenzene, nitrobenzene, resorcinol, sulfolane, or styrene.  40 C.F.R. § 61.341.

76.     Formosa Texas operates a chemical manufacturing plant as defined at 40 C.F.R. § 61.341 and therefore is subject to the requirements of 40 C.F.R. Part 61, subpart FF.

77.     Based on the EPA inspection findings, reports, and further investigation, Formosa Texas has violated provisions of 40 C.F.R. Part 61, subpart FF.

## FIRST CLAIM FOR RELIEF
(Failure to Submit Compliance Certification)

78.     Pursuant to 40 C.F.R. § 61.357(d)(1), if the total annual benzene ("TAB") quantity from facility waste is equal to or greater than 10 Mg/yr (11 ton/yr), then the owner or operator shall submit to EPA within 90 days after January 7, 1993, unless a waiver of compliance is granted, or by the date of initial startup for a new source with an initial startup after the effective date, a certification that the equipment necessary to comply with these standards has been installed and that the required initial inspections or tests have been carried out in compliance with 40 C.F.R. Part 61, subpart FF.

79.     For Reporting Years 2000 and 2001, Formosa reported TAB values of 10.44 Mg and 10.68 Mg, respectively.  For Reporting Year 2002, during which the OLII process unit re-started operation, Formosa reported a TAB value of 30.18 Mg.

80.     Formosa therefore was required to submit to EPA a certification that the equipment necessary to comply with the standards had been installed and that the required initial inspections or test had been carried out in accordance with 40 C.F.R. Part 61, subpart FF.

81.     Formosa violated 40 C.F.R. § 61.357(d)(1) by failing to submit the required certification.

## SECOND CLAIM FOR RELIEF
(Failure to Sample Waste Streams at Proper Point of Generation)

82.     40 C.F.R. § 61.355 (b) requires that an owner or operator, for purposes of calculating the TAB, determine the annual waste quantity at the point of generation, unless otherwise provided in 40 C.F.R. §§ 61.355 (b)(1), (2), (3), and (4), by one of the methods given in 40 C.F.R. §§ 61.355 (b)(5) through (b)(7).

83.     Pursuant to 40 C.F.R. § 61.341, point of generation means the location where the waste stream exits the process unit component or storage tank prior to handling or treatment in an operation that is not an integral part of the production process or in the case of waste management units that generate new wastes after treatment, the location where the waste stream exits the waste management unit component.

84.     Formosa Texas violated 40 C.F.R. § 61.355(b) by failing to sample each waste stream at the proper point of generation.

85.     Unless restrained by order of this Court, Formosa Texas will continue to violate 40 C.F.R. § 61.355 (b) and the CAA.

## THIRD CLAIM FOR RELIEF
(Failure to Maintain Wastewater Treatment System Certification)

86.     Pursuant to 40 C.F.R. § 61.356(e), an owner or operator using a treatment process or wastewater treatment system unit in accordance with 40 C.F.R. § 61.348 shall maintain for the life of the unit the documents listed in 40 C.F.R. § 61.356(e)(1) through (4).

87.     Pursuant to 40 C.F.R. § 61.356(e)(1), an owner or operator shall prepare a statement signed and dated, certifying that the unit is designed to operate at the documented performance level when the waste stream entering the unit is at the highest waste stream flow

- 21 -

rate and the benzene content expected to occur.  The owner or operator is required to keep a copy of this certification for the life of the unit.

88.     Formosa violated 40 C.F.R. § 61.356(e)(1) by failing to maintain the required certification stating that its wastewater treatment system unit is designed to operate at the documented performance level when the waste stream entering the unit is at the highest waste stream flow rate and benzene content expected to occur.

### FOURTH CLAIM FOR RELIEF
(Failure to Maintain Documentation of Wastewater Treatment System Performance)

89.     Pursuant to 40 C.F.R. § 61.356(e)(2), if engineering calculations are used to determine the treatment process or wastewater system unit performance, then the owner or operator shall maintain the complete design analysis for the unit.  The design analysis shall include for example the following information: Design specifications, drawings, schematics, piping and instrumentation diagrams, and other documentation necessary to demonstrate the unit performance.

90.     Formosa Texas violated 40 C.F.R. § 61.356(e)(2) by failing to maintain necessary documents to determine wastewater treatment system unit performance.

91.     Unless restrained by order of this Court, Formosa Texas will continue to violate 40 C.F.R. § 61.356(e)(2) and the CAA.

### FIFTH CLAIM FOR RELIEF
(Failure to Maintain Records to Verify No Detectable Emissions)

92.     Pursuant to 40 C.F.R. § 61.356(h), an owner or operator shall maintain a record for each test of no detectable emissions required by 40 C.F.R. §§ 61.343 through 61.347 and 61.349.  40 C.F.R. § 61.356(h) provides that the record will include the following

information: date the test is performed, background level measured during test, and maximum concentrations indicated by the instrument reading measured for each potential leak interface.  If detectable emissions are measured at a leak interface, then the record shall also include the waste management unit, control equipment, and leak interface location where detectable emissions were measured, a description of the problem, a description of the corrective action taken, and the date the corrective action was completed.

93.     Formosa Texas violated 40 C.F.R. § 61.356(h) by failing to maintain the required records to verify no detectable emissions from each potential emissions point.

94.     Unless restrained by an Order of the Court, these and similar violations of the CAA and the implementing regulations will continue.

95.     Unless restrained by order of this Court, Formosa Texas will continue to violate 40 C.F.R. § 61.356(h) and the CAA.

## LEAK DETECTION AND REPAIR CLAIMS

### SIXTH CLAIM FOR RELIEF
(Failure to Monitor Valves in the First Month of the Quarter)

96.     LDAR standards in 40 C.F.R. § 60.482-7(c)(1) and 40 C.F.R. § 61.242-7(c)(1) apply to valves in gas and vapor service and light liquid service in the PPU unit, and LDAR standards in 40 C.F.R. § 60.482-7(c)(1) apply to apply to valves in gas and vapor service and light liquid service in the HDPE II unit.

97.     Pursuant to 40 C.F.R. § 60.482-7(a) and 40 C.F.R.  § 61.242-7(a), each valve in gas or vapor service and in light liquid service must be monitored monthly to detect leaks by the methods specified in §§ 60.485(b) and 61.245, respectively.

- 23 -

98.     Pursuant to 40 C.F.R. § 60.482-7(c)(1) and 40 C.F.R. § 61.242-7(c)(1), any valve for which a leak is not detected for two (2) consecutive months may be monitored the first month of every quarter, beginning with the next quarter, until a leak is detected.

99.     Formosa Texas monitored valves in the PPU unit in the second month of the third quarter of 2001 and monitored valves in the HDPE II unit in the second month of the fourth quarter of 2002.

100.    Formosa Texas violated 40 C.F.R. § 60.482-7(c)(1) and 40 C.F.R. § 61.242-7(c)(1)  by failing to monitor valves in at least two (2) process units in the first month of the quarter.

## SEVENTH CLAIM FOR RELIEF
### (Failure to Monitor Valves after Leaks Detections)

101.    LDAR standards in 40 C.F.R. § 60.482-7(c) apply to valves in gas and vapor service and light liquid service in the Formosa Texas FHC, HDPE, HDPEII, LLDPE, MT, OLEFINS, OLII, PPU, and PPII units.

102.    Pursuant to 40 C.F.R. § 60.482-7(c)(2), if a leak is detected in a valve eligible for quarterly monitoring pursuant to 40 C.F.R. § 60.482-7(c)(1) (because no leak was detected for 2 successive months), the valve shall be monitored monthly until a leak is not detected for two consecutive months.

103.    Formosa Texas violated 40 C.F.R. § 60.482-7(c)(2) by failing, after a leak was detected, on at least 50 occasions during 2001, 2002, and 2003, to monitor light-liquid or gaseous service valves monthly until a leak was not detected for 2 consecutive months.

## EIGHTH CLAIM FOR RELIEF
### (Failure to Make First Attempts at Repair of Leaking Valves)

104.    LDAR standards in 40 C.F.R. § 60.482-7(d) apply to valves in gas and vapor service and light liquid service in the Formosa Texas OLEFINS, OLII, GHU, PPU/PPVOC, EDC, EGVOC, MT, FHC, VCM, HDPE, and HDPEII units.  LDAR standards in 40 C.F.R. § 61.242-7(d) apply to valves in gas and vapor service and light liquid service in the Formosa Texas OLEFINS, OLII, PPU/PPVOC, MT, and VCM units.  LDAR standards in 40 C.F.R. § 63.168(f) apply to valves in gas and vapor service and light liquid service in the Formosa Texas EDC, EGVOC, and MT units.

105.    Pursuant to 40 C.F.R. §§ 60.482-7(d)(2),  61.242-7(d)(2), 63.168(f)(2), a first attempt at repair shall be made no later than 5 days after each leak is detected.

106.    Pursuant to Pursuant to 40 C.F.R. §§ 60.482-7(e), 60.242-7(e), and 63.168(g), first attempts at repair include, but are not limited to, the following best practices where applicable: (1) tightening of bonnet bolts; (2) replacement of bonnet bolts; (3) tightening of packing gland nuts; (4) injection of lubricant into lubricated packing.

107.    Formosa Texas violated 40 C.F.R. §§ 60.482-7(d)(2), 61.242-7(d)(2), 63.168(f)(2) by failing to, on at least 24 occasions during 2001, 2002, and 2003, make a first attempt at repair within 5 calendar days of detecting a leak.

108.    Unless restrained by order of this Court, Formosa Texas will continue to violate 40 C.F.R. §§ 60.482-7(d)(2), 61.242-7(d)(2), 63.168(f)(2) and the CAA.

## NINTH CLAIM FOR RELIEF
(Failure to Make Final Repairs of Leaking Valves)

109.    LDAR standards in 40 C.F.R. § 60.482-7(d) apply to valves in gas and vapor service and light liquid service in the Formosa Texas OLEFINS, GHU, PPII, MT, FHC, VCM, HDPE, and HDPEII units.  LDAR standards in 40 C.F.R. § 61.242-7(d) apply to valves in gas and vapor service and light liquid service in the Formosa Texas OLEFINS, MT, and VCM units.  LDAR standards in 40 C.F.R. § 63.168(f) apply to valves in gas and vapor service and light liquid service in the Formosa Texas MT and VCM units

110.    Pursuant to 40 C.F.R. §§ 60.482-7(d)(1),  61.242-7(d)(1), and 63.168(f)(1), when a leak is detected, it shall be repaired as soon as practicable, but no later than 15 calendar days after the leak is detected, except as provided in 40 C.F.R. § 60.482-9.

111.    Formosa Texas violated 40 C.F.R. §§ 60.482-7(d)(1),  61.242-7(d)(1), and 63.168(f)(1) by not repairing a detected leak as soon as practicable, but not later than 15 calendar days after the leak was detected.

112.    Unless restrained by order of this Court, Formosa Texas will continue to violate 40 C.F.R. §§ 60.482-7(d)(1),  61.242-7(d)(1), and 63.168(f)(1) and the CAA.

## TENTH CLAIM FOR RELIEF
(Failure to Properly Calculate Leak Rates)

113.    LDAR standards in 40 C.F.R. Part 63, subpart H, apply to valves, flanges and connectors, pumps, compressors, and agitators in the Formosa Texas VCM unit, and to valves, flanges, and connectors in the Formosa Texas EDC, EGVOC, MT, and GHU units.

114.    Pursuant to 40 C.F.R. § 63.160(a), valves, flanges, connectors, pumps, compressors, agitators, and other types of equipment, that are intended to operate in organic

- 26 -

hazardous air pollutant service for 300 hours or more during the calendar year within a source are subject to the provisions of specific subpart in 40 C.F.R., Part 63, that reference subpart H.

115.    Pursuant to 40 C.F.R. § 63.168(b), the owner or operator of a source subject to 40 C.F.R. Part 63, subpart H, shall monitor all required equipment, except as provided in 40 C.F.R. § 63.162(b) of subpart H and 40 C.F.R. §§ 63.168 (h) and (i) at the intervals specified in 40 C.F.R. § 63.168(c) and (d) and shall comply with all other provisions of 40 C.F.R. § 63.168, except as provided in 40 C.F.R. §§ 63.171, 63.177, 63.178, and 63.179.

116.    40 C.F.R. § 63.168(d) sets forth the intervals that the owner or operator shall monitor for leaks using the calculation for percent leaking valves as determined by 40 C.F.R. § 63.168(e).

117.    Pursuant 40 C.F.R. § 63.168(e)(2), percent leaking equipment shall be calculated as a rolling average for two consecutive monitoring periods for monthly, quarterly, or a semiannual monitoring program.

118.    Formosa Texas monitors its equipment subject to 40 C.F.R. Part 63, subpart H, on a monthly basis.  A review of the Formosa's semiannual report from January 17, 2001 to July 24, 2003, demonstrated that Formosa had not calculated its percent leaking equipment as a  rolling average for two consecutive monitoring periods.

119.    Therefore, Formosa Texas has violated 40 C.F.R. § 63.168(e)(2) by failing to calculate its leak percentage as a rolling average for two consecutive monitoring periods.

### ELEVENTH CLAIM FOR RELIEF
(Failure to Close Open-ended Line)

120.    LDAR standards in 40 C.F.R. § 60.482-6 apply to the Formosa Texas HDPE unit.

121.    Pursuant to 40 C.F.R. § 60.482-6(a)(1), each open-ended valve or line shall be equipped with a valve, plug, cap, or other device, subject to certain exceptions.

122.    Formosa Texas failed to close at least one open-ended line in the HDPE unit with a valve plug, cap, or other device, as required by 40 C.F.R. § 60.482-6(a)(1).

123.    Therefore, Formosa Texas has violated 40 C.F.R. § 60.482-6(a)(1) by failing to close at least one open-ended line in the HDPE unit with a valve plug, cap, or other device.

## TWELFTH CLAIM FOR RELIEF
(Failure to Monitor Components)

124.    LDAR standards in 40 C.F.R. § 60.482-7(a) apply to equipment in the Formosa Texas LLDPE and HDPE units.

125.    Pursuant to 40 C.F.R. § 60.482-7(a), each valve in gas/vapor service and in light liquid service must be monitored monthly to detect leaks, subject to certain exceptions.

126.    According to Formosa Texas estimates, at the time of the EPA inspections, Formosa Texas had failed to monitor over 500 valves in the LLDPE and HDPE units since the third quarter of calendar year 2000.

127.    Therefore, Formosa violated 40 C.F.R. § 60.482-7(a) by failing to monitor components in gas/vapor service and in light liquid service.

128.    Unless restrained by order of this Court, Formosa Texas will continue to violate 40 C.F.R. § 60.482-7(a) and the CAA.

- 28 -

**THIRTEENTH CLAIM FOR RELIEF**
(Failure to Monitor in Accordance with EPA Method 21)

129.    LDAR standards in 40 C.F.R. § 60.482-7(a) apply to equipment in the Formosa Texas VCM, PVC, OLEFINS, MT, LLDPE, HDPE, and PPII units.  LDAR standards in 40 C.F.R. § 61.242-7 apply to equipment in the Formosa Texas VCM, PVC, OLEFINS, and MT units.  LDAR standards in 40 C.F.R. § 63.168(b)(1) apply to equipment in the Formosa Texas VCM and MT units.

130.    Pursuant to 40 C.F.R. § 60.482-7(a), 40 C.F.R. § 242-7, and 40 C.F.R. § 63.168(b)(1), all equipment subject to 40 C.F.R. Part 60, Subpart VV; 40 C.F.R. Part 61, Subpart V; and 40 C.F.R. Part 63, Subparts H and UU must be monitored in accordance with Method 21 of 40 C.F.R. Part 60, Appendix A.

131.    Based on comparative monitoring conducted by EPA inspectors, and EPA inspectors' observations of Formosa LDAR monitoring, at the time of the EPA Inspection, Formosa Texas has failed to comply with Method 21 in at least seven (7) process units at the Formosa Texas Facility: VCM, PVC, OLEFINS, MT, LLDPE, HDPE, and PPII.

132.    Therefore, Formosa Texas has violated 40 C.F.R. §§ 60.482-7(a), 60.242-7, and 63.168(b)(1), by failing to monitor all equipment subject to 40 C.F.R. Part 60, Subpart VV; 40 C.F.R. Part 61, Subpart V; and 40 C.F.R. Part 63, Subparts H and UU in accordance with Method 21 of 40 C.F.R. Part 60, Appendix A.

133.    Unless restrained by order of this Court, Formosa Texas will continue to violate 40 C.F.R. §§ 60.482-7(a), 60.242-7, and 63.168(b)(1) and the CAA.

## VINYL CHLORIDE NESHAP VIOLATIONS

134.    Formosa Texas owns and operates an affected facility subject to the requirements of 40 C.F.R. Part 61, Subparts A and F (National Emission Standard for Vinyl Chloride).

## FOURTEENTH CLAIM FOR RELIEF
(Failure to Comply with Approved Leak Detection and Elimination Program)

135.    Pursuant to 40 C.F.R. § 61.65(b)(8)(i) an owner or operator of a vinyl chloride plant must minimize vinyl chloride emissions due to leaks from equipment in vinyl chloride service by, among other things, operating a reliable and accurate vinyl chloride monitoring system for detection of major leaks and identification of the general area of the plant where a leak is located.  A vinyl chloride monitoring system means a device which obtains air samples from one or more points on a continuous sequential basis and analyzes the samples.

136.    Pursuant to 40 C.F.R. § 61.65(b)(8)(i), the vinyl chloride monitoring system shall be operated according to a program developed by the plant owner or operator ("LDE Program").

137.    At the time of EPA's inspections of the Formosa Texas Facility, Formosa had a LDE Program, which had been approved by the TCEQ.

138.    The Formosa Texas LDE Program defined a leak as any monitor reading of 1 ppm VCM or greater.

139.    During the on-site EPA inspection, EPA inspectors observed software settings in the Formosa Texas LDE Program which reported a leak only when two consecutive readings, separated by 20 to 30 minutes, equal to or greater than 1 ppm VCM from the same sample location, were recorded.

- 30 -

140.   40 C.F.R. § 61.65(b)(8)(i)(D) requires that an LDE Program provide for an acceptable calibration and maintenance schedule for the vinyl chloride monitoring system and portable hydrocarbon detector; and, for the vinyl chloride monitoring system, a daily span check is to be conducted with a concentration of vinyl chloride equal to the concentration defined as a leak under the LDE Program.

141.   Formosa Texas used a 10 ppm VCM gas to perform its daily calibrations despite the fact that the Formosa Texas LDE Program defined a leak as 1 ppm VCM.

142.   Formosa Texas has violated 40 C.F.R. § 61.65(b)(8)(i) by failing to comply with the requirements of its LDE Program.

143.   Unless restrained by order of this Court, Formosa Texas will continue to violate 40 C.F.R. § 61.65(b)(8)(i) and the CAA.

## RESOURCE CONSERVATION AND RECOVERY ACT

144.   Paragraphs 1 through 26 are realleged and incorporated herein by reference.

145.   Pursuant to 30 TEX.ADMIN.CODE § 335.1 and 40 C.F.R. § 260.10, Formosa Texas is a generator of hazardous waste as identified or listed in 40 C.F.R. Part 261.

## HAZARDOUS WASTE DETERMINATION VIOLATIONS

146.   Pursuant to 30 TEX.ADMIN.CODE § 335.504, any person who generates a solid waste as defined in 40 C.F.R. § 261.2 must determine if that waste is a hazardous either by applying the required test method or by applying its knowledge of the hazardous characteristic of the waste in light of the materials or the processed used.

**FIFTEENTH CLAIM FOR RELIEF**
(Failure to Make Waste Determination for Paint Removal Media)

147.    At the time of the EPA Inspection Formosa used glass beads and steel shot to remove paint from equipment at the Texas Facility.

148.    Formosa personnel informed EPA inspectors that Formosa discards spent glass beads in the general trash and that spent steel shot was "put with the scrap metal."

149.    When EPA inspectors requested documentation of hazardous waste determination for the spent glass beads and steel shot, Formosa did not provide any evidence that a hazardous waste determination had been made.

150.    Therefore, Formosa Texas failed to make a hazardous waste determination from the glass beads and steel shot in violation of 30 TEX.ADMIN.CODE § 335.504.

151.    Unless restrained by an Order of the Court, Formosa Texas will continue to violate 30 TEX.ADMIN.CODE § 335.504.

**SIXTEENTH CLAIM FOR RELIEF**
(Failure to Make Waste Determination for Tank C06B Wastewater)

152.    EPA inspectors observed wastewater from Formosa's wastewater treatment plant ("WWTP"), specifically, Tank C06B, flowing to the ground.

153.    The deposit of this wastewater onto the ground constitutes disposal of a solid waste.  30 TEX.ADMIN.CODE § 335.1(40) and (133)

154.    At the time of the EPA inspection, Formosa Texas had not made a hazardous waste determination for the wastewater that exited the WWTP.

155.    Therefore, Formosa Texas has violated 30 TEX.ADMIN.CODE § 335.504 by failing to make a hazardous waste determination for the wastewater from Tank C06B, which was deposited on the ground.

156.    Unless restrained by an Order of the Court, Formosa Texas will continue to violate 30 TEX.ADMIN.CODE § 335.504.

## SEVENTEENTH CLAIM FOR RELIEF
(Failure to Make Waste Determination for CPI Separator Water Used in Cooling Towers)

157.    At the time of the EPA inspection, Formosa Texas occasionally was using wastewater from the CPI separator in the Olefins I production unit to feed the Formosa Texas cooling towers.

158.    At the time of the EPA inspection, Formosa Texas had determined that the petroleum contaminated debris that is removed from the CPI separator in the Olefins I unit met the definition of a K170 listed hazardous waste.

159.    At the time of the EPA Inspection, Formosa Texas had not made a hazardous waste determination for the wastewater from the CPI separator in the Olefins I production unit that was used to feed the Texas Facility cooling towers.

160.    Therefore, Formosa Texas has violated 30 TEX.ADMIN.CODE § 335.504 by failing to make a hazardous waste determination for the wastewater from the CPI separator in the Olefins 1 production unit used to feed the Formosa Texas cooling towers.

161.    Unless restrained by an Order of the Court, Formosa Texas will continue to violate 30 TEX.ADMIN.CODE § 335.504 [40 C.F.R. § 262.11].

- 33 -

**EIGHTEENTH CLAIM FOR RELIEF**
(Failure to Make Hazardous Waste Determination for WWTP Biological Treatment Sludge)

162.    The Formosa Texas WWTP received contaminated groundwater carrying the following hazardous waste listings: U077, K019, and K020.

163.    On April 5, 1996, the TNRCC granted Formosa Texas a delisting for the WWTP biological treatment sludge, with the condition that groundwater treated in the wastewater treatment system, and carrying the listings U077, K019, and K020 be pretreated to risk-based levels in the TNRCC Risk Reduction Rules and the universal treatment standards in 40 C.F.R., Part 268.

164.    Data provided to the EPA inspectors by Formosa Texas demonstrated that over a period of seven (7) days there were four (4) exceedances of the universal treatment standard for EDC in U077, K019, and K020 wastewaters.

165.    Because Formosa Texas failed to meet the conditions for delisting of its WWTP biological treatment sludge, that sludge was listed hazardous waste carrying the listings U077, K019, and K020.

166.    Formosa Texas did not make a hazardous waste determination for the WWTP biological treatment sludge, and did not manage the sludge as a listed hazardous waste.

167.    Therefore, Formosa Texas failed to make a hazardous waste determination from the WWTP biological treatment sludge in violation of 30 TEX.ADMIN.CODE § 335.504.

168.    Unless restrained by an Order of the Court, Formosa Texas will continue to violate 30 TEX.ADMIN.CODE § 335.504.

## NINETEENTH CLAIM FOR RELIEF
(Failure to Mark Hazardous Waste Storage Containers)

169.    30 TEX.ADMIN.CODE § 335.69(d)(2),  permit a generator of hazardous waste to accumulate as much as 55 gallons of hazardous waste in containers at or near the point of generation where waste initially accumulates, which is under the control of the operator of the process generating the waste without a permit or interim status and without complying with 40 C.F.R. § 262.34(a), provided the generator complies with 40 C.F.R. §§ 265.171, 265.172, 265.173(a), and marks his containers either with the words "Hazardous Waste" or with other words that identify the contents of the containers.

170.    Pursuant to 30 TEX.ADMIN.CODE § 335.69(d)(2), a generator must, with respect to that amount of excess waste, comply within three days with 40 C.F.R. § 262.34 (a), 40 C.F.R. §§ 265.171, 265.172, 265.173(a), and mark those containers either with the words "Hazardous Waste" or with other words identifying the contents of the containers.

171.    At the time of the EPA inspection, one container of hazardous waste at a satellite accumulation area in the Formosa Texas main laboratory was not marked with the words "Hazardous Waste," or other words identifying the contents of the container.

172.    Therefore, Formosa Texas violated 30 TEX.ADMIN.CODE § 335.69(d)(2) by failing to mark a container with the words "Hazardous Waste," or other words identifying the contents of the container.

## TWENTIETH CLAIM FOR RELIEF
(Failure to Hazardous Waste Containers with Accumulation Start Date)

173.    Pursuant to 30 TEX.ADMIN.CODE § 335.69(e), a generator must, with respect to that amount of excess waste, during the three day period, mark the container holding

- 35 -

the excess accumulation of hazardous waste with the date the excess amount began accumulating.

174.     At the time of the EPA inspection, three (3) drums were being stored at the satellite accumulation area in the EDC plant, containing a total of more than 55 gallons of hazardous waste.  None of the drums was marked with an accumulation start date.

175.     Pursuant to 30 TEX.ADMIN.CODE § 335.69(a)(2), a generator may accumulate in containers hazardous waste on-site for 90 days or less without a permit or without having interim status, provided that the generator complies with the applicable requirements of 40 C.F.R. Part 265, subpart I, AA, BB, and CC; and the generator marks and make visible for inspection the beginning date of accumulation on each container.

176.     At the time of the EPA inspection, the accumulation start date was not marked on three 55-gallon drums of hazardous waste from the Formosa Texas main laboratory. The drums were accumulated in an outside shed, which Formosa had designated as a satellite accumulation point.

177.     The wastes contained in those three 55-gallon drums had initially been accumulated in small containers located in the hoods in the separate labs inside the Formosa Texas building.

178.     Therefore, the outside shed must be classified as a "less-than-90-day" accumulation point.

179.     Accordingly, Formosa Texas must mark each of the drums in the outside shed with the beginning date of waste accumulation in such drum.

180.    Therefore, Formosa Texas violated 30 TEX.ADMIN.CODE § 335.69(a)(2) by failing to mark each of the drums in the outside shed with the beginning date of waste accumulation in such drum.

### TWENTY-FIRST CLAIM FOR RELIEF
(Failure to Close Hazardous Waste Storage Containers)

181.    Pursuant to 30 TEX.ADMIN.CODE 335.69(d)(1), a container holding waste must always be closed during storage, except when it is necessary to add or remove waste.

182.    At the time of the EPA inspection, four (4) containers of hazardous waste at satellite accumulation areas in the Formosa Texas main laboratory were not closed during accumulation.

183.    Therefore Formosa Texas violated 30 TEX.ADMIN.CODE 335.69(d)(1) by failing to close containers of hazardous waste.

### CLEAN WATER ACT

184.    Paragraphs 1 through 14 and 55 through 65 are realleged and incorporated herein by reference.

185.    At all relevant times Formosa Texas discharged wastewater from its permitted outfalls, Outfalls 001 and Outfall 003, into Lavaca Bay.

### TWENTY-SECOND CLAIM FOR RELIEF
(Violations of Effluent Limitations)

186.    Formosa Texas's Discharge Monitoring Reports ("DMRs"), filed during the period of March 2001 through September 2007, reported effluent limitation violations for Outfall 001, set forth in TPDES Permit No. 02436, on at least 22 separate occasions.

187.     Therefore, Formosa Texas violated TPDES Permit No. 02436 by exceeding the effluent limitations contained in that permit.

188.     Unless restrained by an order of the Court, Formosa Texas will continue to violate its TPDES Permit and the CWA.

## TWENTY-THIRD CLAIM FOR RELIEF
(Failure to Sample Stormwater for Required Parameters)

189.     On one or more occasions Formosa Texas violated its TPDES Permit No. 02436 by failing to sample its storm water discharge for all the required parameters, specifically, Formosa Texas failed to collect the required four (4) sample aliquots for the composite sample for volatile parameters at Outfall 001 on April 12, 2001, and failed to sample and analyze for 1,2-dichloroethane and total purgeable hydrocarbons at Outfall 003 during a stormwater discharge on November 17, 2001.

## TWENTY-FOURTH CLAIM FOR RELIEF
(Failure to Properly Determine Depth of Water in Lavaca Bay)

190.     Under TPDES Permit No. 02436, Formosa Texas discharged wastewater via Outfall 001 into Lavaca Bay through a diffuser located 8,400 feet from shore.

191.     TPDES Permit No. 02436 requires Formosa Texas to cease wastewater discharges at times when the depth of Lavaca Bay at Channel Marker 22 (near the diffuser) is less than one (1) foot in depth.

192.     TPDES Permit No. 02436 required Formosa Texas to install a staff gauge or alternative equipment "in the vicinity of Channel Marker 22" and read it daily to comply this the depth requirement.

193.    At the time of the EPA Inspection, Formosa Texas was reading the bay depth near the shoreline at a dock and extrapolating the depth at Channel Marker 22 based on a supposedly known differential between the depth at the dock and the depth at Channel Marker 22.  This alternative procedure was not contained in TPDES Permit No. 02436.

194.    Therefore, Formosa Texas violated TPDES Permit No. 02436, Other Requirements Section, No. 13, by failing to locate its gauge or other equipment in the proper location.

195.    Unless restrained by an order of the Court, Formosa Texas will continue to violate its TPDES Permit and the CWA.

### Reporting Requirements (CERCLA/EPCRA)

196.    Paragraphs 1 through 14 and 66 through 73 are realleged and incorporated herein by reference.

197.    Pursuant to Section 313(a) of EPCRA, 42 U.S.C. § 11023(a), the owner or operator of a facility subject to the requirements of Section 313(a) of EPCRA, 42 U.S.C. § 11023(a) must complete a toxic chemical release form (Form R) as published under subsection (g) of Section 313 for each toxic chemical listed under subsection (c) of Section 313 that was manufactured, processed, or otherwise used in quantities exceeding the toxic chemical threshold quantity established by subsection (f) of Section 313 during the preceding calendar year at such facility.

198.    Formosa Texas is the owner and/or operator of a facility subject to the requirements of Section 313(a) of EPCRA, 42 U.S.C. § 11023(a).

199.     Pursuant to 40 C.F.R. § 372.30(a), for each toxic chemical known by the owner or operator to be manufactured (including imported), processed, or otherwise used in excess of an applicable threshold quantity in § 372.25, § 372.27, or § 372.28 of 40 C.F.R. Part 372, subpart A, at its covered facility described in 40 C.F.R. § 372.22 for a calendar year, the owner or operator must submit to EPA and to the State in which the facility is located a completed EPA Form R (EPA Form 9350–1) and, for the dioxin and dioxin-like compounds category, EPA Form R Schedule 1 (EPA Form 9350–3) in accordance with the instructions referred to in 40 C.F.R. Part 372, subpart E.

## TWENTY-FIFTH CLAIM FOR RELIEF
### (Failure to Report Activities Involving Toxic Chemicals)

200.     Pursuant to 40 C.F.R. § 372.30(d), each Form R report for activities involving a toxic chemical that occurred during a calendar year at a covered facility must be submitted on or before July 1 of the next year.

201.     Formosa Texas violated 40 C.F.R. § 372.30(d) by failing to report activities involving the following toxic chemicals in the years indicated: chloromethane (2001); chromium compounds (2002); 1,4 dioxane (2001); 1, 4 dioxane (2002); zinc compounds (2002).

## TWENTY-SIXTH CLAIM FOR RELIEF
### (Incorrectly Reporting Activities Involving Toxic Chemicals in Form R Reports)

202.     Pursuant to 40 C.F.R. § 372.85(b)(2), each Form R must include the signature of a senior management official certifying the following: "I hereby certify that I have reviewed the attached documents and, to the best of my knowledge and belief, the submitted information is true and complete and that amounts and values in this report are accurate based upon reasonable estimates using data available to the preparer of the report."

203.     Formosa Texas violated 40 C.F.R. § 372.85(b)(2) by submitting incorrect Form R reports for activities involving the following toxic chemicals in the years indicated:  1, 3 butadiene (2005); benzene (2005); ethylene (2002, 2005); methanol (2003, 2005); naphthalene (2005); N-hexane (2002); propylene (2002, 2005); styrene (2005); toluene (2005); vinyl chloride (2003).

204.     Formosa Texas's failure to submit correct Form R reports for the toxic chemicals listed in the above paragraph was demonstrated by Formosa Texas's subsequent submission to EPA of revised Form R reports for those chemicals.

205.     Formosa Texas violated 40 C.F.R. § 372.85(b)(2) by submitting incorrect Form R reports, specifically, Formosa Texas calculated incorrectly Section 8.1b of the Form R reports,  for activities involving the following toxic chemicals in the years indicated: chromium (2002); 1,1,2 trichloroethane (2004); benzene (2004); dichlorodifluoromethane (2004); ethylbenzene (2004); ethylene glycol (2004); xylene (2004).

206.     Formosa Texas violated 40 C.F.R. § 372.85(b)(2) by submitting incorrect Form R reports, specifically, Formosa Texas failed to include the appropriate energy recovery code in Section 7B of its Form R reports,  for activities involving the following toxic chemicals in the years indicated: 1,2 dichloroethane (2002); benzene (2002); chloroform (2002).

207.     Formosa Texas violated 40 C.F.R. § 372.85(b)(2) by submitting incorrect Form R reports, specifically, Formosa Texas under-reported amounts for activities involving the following toxic chemicals in the years indicated: 1,3 butadiene (2001); 1,2 dichloroethane (2001); ethylene (2001); propylene (2001); vinyl chloride (2001); 1,1,2 trichloroethane (2002); benzene (2002); chlorobenzene (2002); dichlorodifluoromethane (2002); dichloromethane;

ethylene glycol (2002); H-hexane (2002); naphthalene (2002); propylene oxide (2002); styrene (2002); tetrachloroethylene (2002); toluene (2002).

208.    Formosa Texas violated 40 C.F.R. § 372.85(b)(2) by submitting incorrect Form R reports, specifically, Formosa Texas failed to include the quantity reported in Section 8.8 of the Form R reports in Section 5 or 6 of those reports,  for activities involving the following toxic chemicals in the years: 1,2 dichloroethane (2001); 1,3 butadiene (2001); benzene (2001); ethylene (2001); ethylene oxide (2001); N-hexane (2001); propylene (2001).

## Formosa Louisiana

## CLEAN AIR ACT

209.    Paragraphs 1 through 14 and 27 through 54 are realleged and incorporated herein by reference.

## LEAK DETECTION AND REPAIR VIOLATIONS

210.    Formosa operated under a Fugitive Emissions Consolidation Program for the VCM I, VCM II, and the PVC plants, Permit No. 0840-00002-09 (the Source Notice and Agreement). The Source Notice and Agreement was signed on the February 28, 1997, and remained in effect until the initial Part 70 permit was issued on August 11, 2008.

211.    Formosa Louisiana operates under a state preconstruction and Part 70 Operating Permit, Permit No.1004-V0 (the PVC Permit) for the PVC Unit.  The Permit was issued on the 24th of October 2001, and expired on the 24th of October 2006.  Formosa Louisiana submitted a timely renewal application for Permit No.1004-V0 on April 20, 2006.  Permit No. 1004-V0 remains in effect pending the outcome of Formosa Louisiana's renewal request.

212.     Pursuant to the Source Notice and Agreement, Formosa Louisiana was required to comply with 40 C.F.R. Part 63, subpart H- National Emission Standards for Organic Hazardous Air Pollutants for Equipment Leaks for the VCM I and VCM II units.

213.     Pursuant to the PVC Permit, Formosa Louisiana is required to comply with 40 C.F.R. Part 60, subpart VV - Standards of Performance for Equipment Leaks in the Synthetic Organic Chemicals Manufacturing Industry for the PVC unit.

214.     40 C.F.R. § 63.180(b)(1) requires monitoring under Part 63, subpart H to comply with Method 21 of 40 C.F.R. Part 60, Appendix A.

215.     40 C.F.R. § 60.482-7(a) requires monitoring under Part 60, subpart VV to comply with Method 21 40 C.F.R. Part 60, Appendix A.

## TWENTY-EIGHTH CLAIM FOR RELIEF
(Failure to Monitor in Accordance with EPA Method 21)

216.      LDAR standards in 40 C.F.R. § 60.482-7(a) apply to equipment in the Formosa Louisiana PVC unit.  LDAR standards in 40 C.F.R. § 63.168(b)(1) apply to equipment in the Formosa Louisiana VCM I and VCM II units.

217.     Pursuant to 40 C.F.R. § 60.482-7(a) and 40 C.F.R. § 63.168(b)(1), all equipment subject to 40 C.F.R. Part 60, Subpart VV and 40 C.F.R. Part 63, Subpart H must be monitored in accordance with Method 21 of 40 C.F.R. Part 60, Appendix A.

218.     Based on monitoring and observations conducted by EPA inspectors at the time of the EPA Inspection, Formosa Louisiana has failed to comply with Method 21 in at least in the PVC, VCM I, and VCM II units.

219.    Therefore, Formosa Louisiana has violated 40 C.F.R. §§ 60.482-7(a) and 63.168(b)(1) by failing to monitor all equipment subject to 40 C.F.R. Part 60, Subpart VV and 40 C.F.R. Part 63, Subpart H in accordance with Method 21 of 40 C.F.R. Part 60, Appendix A.

220.    Unless restrained by order of this Court, Formosa Louisiana will continue to violate 40 C.F.R. §§ 60.482-7(a) and 63.168(b)(1) and the CAA.

### TWENTY-NINTH CLAIM FOR RELIEF
(Failure to Close Open-ended Valves)

221.    LDAR standards in 40 C.F.R. § 63.167 apply to the Formosa Louisiana Facility.

222.    Pursuant to 40 C.F.R. § 40 C.F.R. § 63.167(a)(1), each open-ended valve or line shall be equipped with a valve, plug, cap, or other device, subject to certain exceptions.

223.    During the Inspection, the inspectors identified five (5) open-ended valves in the VCM II unit.  The valve numbers are 25912, 12840, 12849, 12858, and 12175.

224.    After reviewing the inspection report and photographs prepared by the inspectors, EPA's enforcement staff identified seven (7) open-ended valves were identified in the VCM II unit. .  The valve numbers are 12174, 12171, 12172, 12173, 12074, 12077, and 099169.

225.    After reviewing the inspection report and photographs prepared by the inspectors, EPA's enforcement staff identified two (2) open-ended valves were identified in the VCM I unit.  The valve numbers are 23456 and 376595.

226.     Ten (10) of the above-listed valves were leaking at the time of the EPA inspection at the following rates: 25912 (300 ppm), 12840 (1,000 ppm), 12849 (600 ppm), 12858

(600 ppm), 12174 (1000 ppm), 12171 (900 ppm), 12074 (1000 ppm), 12077 (1000 ppm), 099169 (1700 ppm), and 376595 (200 ppm).

227.    None of the identified open-ended valves were equipped with a cap, blind flange, plug, or second valve.

228.    Formosa provided no documentation to EPA to demonstrate that the identified open-ended valves are exempt from regulations.

229.    Formosa has therefore violated the Source Notice and Agreement and 40 C.F.R. § 63.167(a)(1) by not equipping each open-ended valve with a cap, blind flange, plug or second valve.

230.    Unless restrained by an order of this Court, Formosa Louisiana will continue to violate the Source Notice and Agreement and 40 C.F.R. 40 C.F.R. § 40 C.F.R. § 63.167(a)(1).

**THIRTIETH CLAIM FOR RELIEF**
(Failure to Identify Leaking Equipment)

231.    LDAR standards in 40 C.F.R. § 63.162 apply to the Formosa Louisiana Facility.

232.    Pursuant to 40 C.F.R. §§ 63.162(f)(1) and (f)(2), when a leaking valve is detected as specified in 40 C.F.R. § 63.168, the leaking equipment should be clearly identified and the identification must remain on the valve until it is monitored as specified in 40 C.F.R. §§ 63.168(f)(3) and 63.175(e)(7)(i)(D) and no leak has been detected during the follow-up monitoring or the identification can be removed after the owner has elected to comply with 40 C.F.R. § 63.174(c)(1)(I) and monitor the valves as specify in 40 C.F.R. § 63.174(c)(1)(I).

233.    EPA identified three leaking valves that were not tagged or otherwise identified (12074, 12077, and 099169), as required by the regulations.

234.    Formosa Louisiana, has therefore violated the Source Notice and Agreement and 40 C.F.R. §§ 63.162(f)(1) and (f)(2) by not identifying its leaking valves.

235.    Unless restrained by an order of this Court, Formosa Louisiana will continue to violate the Source Notice and Agreement and 40 C.F.R. §§ 63.162(f)(1) and (f)(2).

## RESOURCE CONSERVATION AND RECOVERY ACT

236.    Paragraphs 1 through 26 are realleged and incorporated herein by reference.

237.    Formosa Louisiana operates as a large quantity generator of hazardous waste with the EPA ID number LAD041224932.

238.    Hazardous waste generated at this facility includes: spent catalysts from the oxychlorination reactors, EDC contaminated materials and carbon from the VCM unit, spent laboratory solvents, and miscellaneous spill clean up materials.

239.    Pursuant to LAC 33:V.109 and 40 C.F.R. § 260.10, Formosa Louisiana is a generator of hazardous waste as identified or listed in 40 C.F.R. Part 261.

### Hazardous Waste Determinations

240.    Pursuant to LAC 33:V.1103 and 40 C.F.R. § 262.11, any person who generates a solid waste as defined in 40 C.F.R. § 261.2 must determine if that waste is a hazardous either by applying the required test method or by applying its knowledge of the hazardous characteristic of the waste in light of the materials or the processed used.

241.    Pursuant to LAC 33:V.1111(A)(3) [40 C.F.R.§ 262.40(c)], a generator must keep records of any test results, waste analyses, or other determinations made in accordance with LAC 33:V.1111 [40 C.F.R. § 262.11], for at least three years from the date the waste was last sent to on-site or off-site treatment, storage, or disposal.

## THIRTY-FIRST CLAIM FOR RELIEF
(Failure to Make Hazardous Waste Determination for Tar Still Residue)

242.    Pursuant to LAC 33:V. 4901 [40 C.F.R. 261.32], heavy ends from the distillation of ethylene dichloride in the ethylene production and heavy ends from the distillation of vinyl chloride in vinyl chloride monomer production are K019 and K020 listed hazardous wastes, respectively.

243.    K019 and K020 listed hazardous wastes are generated in Formosa Louisiana's Tar Still unit.

244.    Approximately every eight (8) months Formosa Louisiana cleans the Tar Still unit.

245.    During the Tar Still cleanout process, Formosa Louisiana pumps the heavy ends from the bottom of the Tar Still to a holding tank.

246.    Formosa Louisiana then adds liquid EDC to the Tar Still and uses the liquid EDC to rinse heavy ends residues from the Tar Still.  The EDC rinsate and heavy ends residues are pumped into the Formosa Louisiana process wastewater system.

247.    Formosa Louisiana then purges the Tar Still with nitrogen.

248.    Formosa Louisiana then opens the Tar Still and hydroblasts the interior to remove the residues remaining inside of the Tar Still.

249.    Formosa runs the hydroblast water through a filter and sends the water to its WWTP for treatment.

250.    Formosa places the solid materials generated during the hydroblast process in drums and ships those materials off-site for disposal as  D019, D022, D028, D043, and F024 listed hazardous wastes.

251.    In addition to any other waste listing code that may apply to those drummed solids, those drummed solids should be identified properly as K019 and K020 listed hazardous waste pursuant to LAC 33:V.109 (definition of "Hazardous Waste," sections 3.b. and 4.b.i.)

252.    Because Formosa Louisiana did not identify those drummed solids as K019 and K020 hazardous waste, Formosa did not make a correct hazardous waste determination in violation of LAC 33:V.1103 [40 C.F.R. § 262.11].

253.    Unless restrained by an order of the Court, Formosa Louisiana will continue to violate LAC 33:V.1103 [40 C.F.R. § 262.11].

### THIRTY-SECOND CLAIM FOR RELIEF
(Failure to Make Hazardous Waste Determination for Wastewater Sludge)

254.    Pursuant to the Mixture Rule and Derived-from Rule, the hydroblast water generated from the cleaning of the Formosa Louisiana Tar Still unit carries the K019 and K020 hazardous waste listing codes.

255.    Formosa Louisiana routes this hydroblast water through an open sewer to its WWTP for treatment.

256.    Because the wastewater sent to the WWTP is a listed hazardous waste (K019 and K020), the wastewater treatment sludge generated in the WWTP also is K019 and

K020 listed hazardous waste pursuant to LAC 33:V.109 (definition of "Hazardous Waste,"

sections 3.b. and 4.b.i.).

257.    Prior to, and at the time of, the EPA Inspection, Formosa Louisiana

identified its WWTP sludge as K174 conditionally-exempt hazardous waste.  Formosa Louisiana

did not identify the WWTP sludge as K019 or K020 hazardous waste.

258.    Therefore, Formosa Louisiana has failed to make an accurate hazardous

waste determination for its WWTP wastewater treatment sludge in violation of LAC 33:V.1103

[40 C.F.R. § 262.11].

259.    Unless restrained by an order of the Court, Formosa Louisiana will

continue to violate LAC 33:V.1103 [40 C.F.R. § 262.11].

### THIRTY-THIRD CLAIM FOR RELIEF
(Offering Hazardous Waste to Transporter or Treatment, Storage, or Disposal Facility without
EPA Identification Number)

260.    Pursuant to LAC 33:V.1105 [C.F.R. § 262.12(c)], a generator is prohibited

from offering his hazardous waste to a transporter or a treatment, storage, or disposal facility that

has not received an EPA identification number.

261.    Formosa Louisiana offered K019 and K020 listed hazardous waste

(wastewater sludge from its WWTP) to Woodside Landfill for disposal as non-hazardous waste.

262.    Woodside Landfill does not have an EPA identification number and does

not have a RCRA Subtitle C permit.

263.    Formosa Louisiana violated LAC 33:V.1105 [40 C.F.R. § 262.12(c)] by

offering hazardous waste to transporters or to a treatment, storage, or disposal facility that does

not have an EPA identification number.

264.    Unless restrained by an order of the Court, Formosa Louisiana will continue to violate LAC 33:V.1105 [40 C.F.R. § 262.12(c)].

## CLEAN WATER ACT

265.    Paragraphs 1 through 14 and 55 through 65 are realleged and incorporated herein by reference.

### THIRTY-FOURTH CLAIM FOR RELIEF
### (Violations of LPDES Permit No. LA0006149)

266.    At all relevant times Formosa Louisiana discharged wastewater from its permitted outfall, Outfall 001, into the Mississippi River.

267.    Based on review of the Formosa Louisiana's DMRs, filed during the period of March 1, 2001 through September 2007, Formosa Louisiana exceeded its effluent limitations set forth in LPDES Permit No. LA0006149 on at least five (5) separate occasions.

268.    Therefore, Formosa Louisiana violated LPDES Permit No. LA0006149 and the CWA by exceeding the effluent limitations contained in that permit.

269.    Unless restrained by an order of the Court, Formosa Louisiana will continue to violate its LPDES Permit and the CWA.

## PENALTIES

270.    As provided in Section 113(b) of the CAA, 42 U.S.C. § 7413(b), the violations set forth above subject Defendants to injunctive relief and civil penalties up to $27,500 per day for each violation of the CAA between January 30, 1997 and March 15, 2004; and $32,500 per day for each violation occurring after March 15, 2004.

271.    As provided in Section 3008(g) of RCRA, 42 U.S.C. § 6928(g), the violations set forth above subject Defendants to injunctive relief and civil penalties of up to

$27,500 per day for each violation occurring before March 16, 2004 and $32,500 per day for each violation occurring after March 16, 2004.

272.    As provided in Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), the violations set forth above subject Defendants to injunctive relief and civil penalties of up to $27,500 per day for each violation of the CWA occurring before March 16, 2004 and up to $32,500 per day for each violation of the CWA occurring on or after March 16, 2004.

273.    As provided in Section 325(c)(1) of EPCRA, 42 U.S.C. § 11045(c)(1), the violations set forth above subject Defendants to injunctive relief and civil penalties of up to $27,500 per day for each violation of the EPCRA occurring after January 30, 1997 and before March 16, 2004 and up to $32,500 per day for each violation of the CWA occurring on or after March 16, 2004.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court grant the following relief:

A.    Permanently enjoin Defendants from further violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq.*; the Clean Water Act, 33 U.S.C. § 1251 *et seq.*; the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*; the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*; and the Emergency Planning and Community Right to Know Act, 42 U.S.C. § 11001 *et seq.* and their implementing permits and regulations.

B.    Order Defendants promptly to take all steps necessary or appropriate to comply with the foregoing laws, regulations and permits.

C.    A judgment assessing civil penalties against Defendants not to exceed
$27,500 per day for each violation that occurred prior to March 15, 2004 and not to exceed
$32,500 per day for each violation which occurred on or after March 16, 2004.

D.    Award Plaintiff the costs and disbursements in this action.

E.    Award such other relief as this Court may deem just and proper.

Respectfully submitted,

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and
  Natural Resources Division
U.S. Department of Justice

SCOTT M. CERNICH
Trial Attorney
Environmental Enforcement Section
Environment and
  Natural Resources Division
U.S. Department of Justice
601 D Street, N.W.
Washington D.C. 20004
(202) 514-0056

- 52 -

TIM JOHNSON
United States Attorney

s/ Daniel Hu
DANIEL HU
Assistant United States Attorney
Southern District of Texas
Bar No. Texas: 10131415
Bar No. S.D. Tex.: 7959
P.O. Box 61129
919 Milam Street
Houston, TX 77208

OF COUNSEL:

MARCIA E. MONCRIEFFE
Assistant Regional Counsel
RCRA Branch
U.S. EPA Region VI
1445 Ross Avenue, Suite 1200
Dallas, TX   75202-2733

CAROLINE B.C. HERMANN
Attorney-Advisor
U.S. EPA
Office of Regulatory Enforcement
(2248A)
1200 Pennsylvania Ave, N.W.
Washington, DC 20460